IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                            1:19-cr-01832-JCH-1

STEVEN O'NEIL,

    Defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR RELEASE

THIS MATTER is before the Court on defendant Steven O'Neil's opposed Motion for Release, filed September 1, 2021.  Doc. 65.  The United States filed its response in opposition on September 9, 2021.  Having reviewed the parties' filings and the record in this case, the Court will deny Mr. O'Neil's motion for the following reasons.

**I.**     **Background**

On June 27, 2019, a federal grand jury returned a one-count indictment against Mr. O'Neil charging him with being a felon in possession of a firearm and ammunition on or about December 1, 2018.  Doc. 2.  Mr. O'Neil was arrested on this indictment about six months later, on January 31, 2020.  Doc. 5.  He apparently was taken into federal custody after being released from the Metropolitan Detention Center (MDC) in Albuquerque.  *See id.*; *see also* Doc. 65 at 1 ("Mr. O'Neil was first arrest[ed] and detained for the instant gun charge in state court in December 2018, and upon information and belief, a federal detaine[r] was lodged in January 2019.").

On February 10, 2020, Mr. O'Neil was released to the La Pasada halfway house, Doc. 14, where he resided for about five months. On July 12, 2020, Mr. O'Neil was "unsatisfactorily discharged from the La Pasada Halfway House as he [was] alleged to have caused extensive property damage" there. *See* Doc. 29. After a hearing, Magistrate Judge Jerry Ritter found that Mr. O'Neil should be detained pending his trial as both a flight risk and a danger to the community. *See* Doc. 35 at 2. Judge Ritter found that the weight of the evidence against Mr. O'Neil was strong. *Id.* He also found that Mr. O'Neil's prior criminal history, his participation in criminal activity while under supervision, his history of violence or use of weapons, his lack of a stable residence or job, his prior failures to appear, and his prior violations of probation, parole or supervised release supported his finding that Mr. O'Neil was both a flight risk and a danger to the community. *See id.* at 2–3. With regard to Mr. O'Neil's termination from La Pasada, Judge Ritter found:

> At hearing today on petition for action on conditions of release, government presented clear and convincing evidence of unsuccessful discharge from halfway house after substantial damage to property in halfway house bathroom; probable cause shown of a new property damages crime (not shown at this hearing to be felony-level). Appears likely to be related to a disruption in mental health condition connected to noncompliance with medication regimen. Ineligible for return to halfway house and no other suitable third-party custodian presented. Taking judicial notice of prior Pretrial Services Report, there is no condition or combination of conditions under 18 U.S.C. 3142 that will assure the appearance of the Defendant at trial and the safety of any other person or the community.

*Id.* at 3. Mr. O'Neil has remained in federal custody since July 12, 2020.

On August 26, 2021, Mr. O'Neil pled guilty to the indictment pursuant to a conditional plea agreement. *See* Docs. 63, 64. In the plea agreement, the "United States agree[d] to recommend a sentence within the applicable sentencing guideline range," but this recommendation is not binding on the district judge. Doc. 63 at 4–5. At the conclusion of the change of plea hearing, Mr. O'Neil requested to be released from custody pending sentencing

primarily because he already had served the amount of time he likely would have to serve under the sentencing guidelines. *See* Doc. 64. The Court declined to release Mr. O'Neil based on his oral request but told him he could file a written motion if he wanted to, and the United States then would have a chance to respond. *See id.* Mr. O'Neil filed his motion for release shortly thereafter. *See* Doc. 65.

Mr. O'Neil asserts in his motion that he now has "been in continuous federal custody for approximately 31 months," that counsel estimates his sentencing guideline range to be 27 to 33 months imprisonment, that Mr. O'Neil is an honorably discharged veteran, that he currently is in litigation with his ex-wife regarding his parental rights over his kids, that he would have a job and a place to stay upon release, that his prior violations of restraining orders and other domestic issues with his ex-wife never involved "physical violence but instead [ ] was telephone harassment," and that he would attend all his mental health treatment appointments and take his medication as prescribed. *See id.* at 1–2. The United States' response describes the events that led to Mr. O'Neil's indictment in this case, which are concerning. Doc. 66 at 1–5. The government also states that it doesn't know what Mr. O'Neil's sentencing guideline range is likely to be, and that Mr. O'Neil's background and criminal history show that he is both a flight risk and a danger to the community. *See id.* at 7–9. With respect to the argument that Mr. O'Neil already has served the amount of time he likely will be sentenced to, the government states that "the solution to that argument is not release, but expedited sentencing." *Id.* at 9. For the following reasons, I agree with the United States.

## II.     Analysis

Once a person "has been found guilty of an offense and who is awaiting imposition or execution of sentence," the Court "shall order" that the person be detained "*unless* the judicial

officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community if released." 18 U.S.C. § 3143(a)(1) (emphasis added). In this case, the Court's primary concern was that if Mr. O'Neil is not released, he likely will serve a sentence longer that what the guidelines recommend. Based on the information before me, however, I cannot reach that conclusion.

First, Mr. O'Neil does not explain his guideline calculation in his motion, and I have no way of determining whether his estimate of the sentencing guideline range is accurate. Second, he alleges that a federal detainer was placed on him while he was in state custody in January 2019, but there is no evidence to that effect. The arrest warrant in this case was not issued until June 27, 2019, and the Court is not in a position to know whether Mr. O'Neil is entitled to credit on his sentence in this case for the time he spent in state custody. *See* 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 331–33 (1992) (Bureau of Prisons (BOP), not the district court, determines whether defendants receive credit for time spent in state custody); *Falan v. Gallegos*, 38 F. App'x 549, 551–52 (10th Cir. 2002) (unpublished) (BOP calculates credit in accordance with § 3585(b); district court may review that decision via a § 2241 petition). Third, even if the Court could determine that Mr. O'Neil is entitled to credit for the time he was in state custody, his calculation of his total time in custody seems to be in error. Mr. O'Neil was arrested by the state on December 1, 2018, and he was formally taken into federal custody on January 31, 2020. He therefore was in state custody for about 14 months (assuming he never was released during that time).[1] And although it has been 19 and a half months since he was brought into federal custody, he was released and living at La Pasada for about five of those months.

---

[1] The Court notes that Mr. O'Neil picked up a charge for aggravated stalking and violation of a restraining order on July 31, 2019, during the time that he purportedly was in state custody. *See* Doc. 10 at 14.

4

Consequently, even if Mr. O'Neil receives credit for all the time he was in state custody (even before there was a federal detainer), he has only been in custody for about 28 and a half months, not 31 months. If Mr. O'Neil proceeds to sentencing expeditiously, he still can obtain a guideline sentence.

Most importantly, however, I cannot conclude by clear and convincing evidence that Mr. O'Neil is neither a flight risk nor a danger to the community. Reviewing the pretrial services report, Mr. O'Neil has failed to appear for court or violated conditions of probation or supervision more than a dozen times since 2002. *See* Doc. 10 at 5–13. His most recent violation of a condition of supervision was in this case when he destroyed property at La Pasada. *See* Doc. 35 at 3. He has been charged with violating a restraining order at least seven times, and he was convicted of the misdemeanor offense of using a telephone to terrify, intimidate, threaten, harass, annoy or offend someone in 2019. *See* Doc. 10 at 9–14. He now has been convicted of being a felon in possession of a firearm, and the government has proffered evidence that he pointed that firearm at someone for no reason. *See* Doc. 66 at 2. Although it appears that some of Mr. O'Neil's criminal behavior is at least partially related to a mental health condition, the conditions of release imposed in this case in February 2020 required Mr. O'Neil to obtain medical and psychiatric treatment as directed, Doc. 14 at 2, yet Judge Ritter found that his disruptive behavior at La Pasada likely was related to "noncompliance with [a] medication regimen," Doc. 35 at 3. On this record, the Court cannot find by clear and convincing evidence that Mr. O'Neil "is not likely to flee or pose a danger to any other person or the community if released." *See* 18 U.S.C. § 3143(a)(1). The Court therefore must deny Mr. O'Neil's motion for release. Mr. O'Neil may nonetheless try to schedule a sentencing hearing before Judge Herrera as expeditiously as

6

possible so that she may determine whether she will accept the recommendation of a guideline sentence, and what that sentence will be.

**III. Conclusion**

**IT IS THEREFORE ORDERED** that defendant Steven O'Neil's opposed Motion for Release (Doc. 65) is **DENIED.**

_____
UNITED STATES MAGISTRATE JUDGE